UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZACLON INCORPORATED a/k/a Independence Land Development Company, | ) ) ) | CASE NO. 1:06CV1015 |
| | ) | |
| Plaintiff, | ) ) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | ) ) | |
| E.I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

This case is before the Court on a cross motion for summary judgment filed by Defendant and a motion for summary judgment filed by Plaintiff.  ECF Dkt. #s 18, 20.  For the following reasons the Court GRANTS Defendant's cross motion for summary judgment, DENIES Defendant's counterclaim, and DENIES Plaintiff's motion for summary judgment.

I.      **FACTS AND PROCEDURAL HISTORY**

On June 12, 1987, Plaintiff Zaclon Incorporated, now known as Independence Land Company ("Plaintiff"), entered into a Purchase and Sale Agreement ("Agreement") to purchase a chemical manufacturing facility, including the land, equipment, patents and buildings, located at 2981 Independence Road in Cleveland, Ohio, from Defendant E.I. DuPont de Nemours and Company ("Defendant").  ECF Dkt. #21, Attachment 1 ("Krimmel Affidavit") at ¶ 1-2, 4; ECF Dkt. #19, Attachment 2 ("the Agreement").  Prior to this sale, Defendant had operated a chemical manufacturing operation at this site for nearly 60 years.  Krimmel Affidavit at ¶ 2. Defendant installed asbestos into the buildings during its period of ownership and Plaintiff was aware of the asbestos at the time of the sale.  *Id.* at 6.

Between 1987 and 1999, Plaintiff incurred minor expenses related to the removal and disposal of the asbestos.  *Id.* at 8.  However, it was not until 1999 that Plaintiff incurred significant costs related to abating asbestos and requested indemnity from Defendant under the Agreement.  *Id.* Defendant refused.  *Id.*

In November of 2003, the City of Cleveland ("City") filed a complaint against Plaintiff for inoperable sprinkler systems in a portion of one of its buildings ("Building 24").  Krimmel Affidavit at ¶ 9.  In response, Plaintiff entered into a plea agreement to dismantle the portion of Building 24 at issue.  *Id.*  Because of the presence of asbestos, Plaintiff was required to remediate asbestos from that portion of Building 24 prior to the dismantlement.  *Id.* at 10.  On January 18, 2004, Plaintiff requested indemnification for the remediation from Defendant pursuant to the Agreement.  *Id.* at 11.  Defendant denied the request.  *Id.*

In February of 2004, Plaintiff filed suit against Defendant in the Cuyahoga County Common Please Court alleging that Defendant retained liabilities under the Agreement for remedying environmental conditions, including asbestos.  *See* ECF Dkt. #19, Attachments 9-10.  On June 25, 2004, the state court dismissed the suit without prejudice.  ECF Dkt. #19, Attachment 11.

On July 7, 2005, Plaintiff filed a second complaint in the Court of Common Pleas of Cuyahoga County, Ohio.  ECF Dkt. #1, Attachment 1.  Thereafter, Plaintiff filed an amended complaint and a second amended complaint.  ECF Dkt. #1, Attachments 2, 4.  On April 25, 2006, Defendant removed the case to the Federal Court for the Northern District of Ohio.  ECF Dkt. #1.  On May 2, 2006, Defendant filed an answer to the second amended complaint along with a jury demand and a counterclaim. ECF Dkt. #4.  On May 11, 2006, Plaintiff filed a reply to the counterclaim with a jury demand.  ECF Dkt. #5.

On September 20, 2006, the parties consented to the jurisdiction of the undersigned.  ECF Dkt. #9.

On May 29, 2007, Defendant filed a cross motion for summary judgment with a memorandum in support.  ECF Dkt. #18, 19.  On May 29, 2007, Plaintiff filed a motion for

summary judgment and a brief in support.  ECF Dkt. #20-21.  On June 28, 2007, Defendant filed

a reply in support of its cross motion for summary judgment.  ECF Dkt. #22.  On the same date,

Plaintiff filed a brief in opposition to Defendant's motion for summary judgment.  ECF Dkt. #23.

On July 6, 2007, the parties presented oral argument in support of their briefs.  *See* ECF

Dkt. #27. Thereafter, on July 9, 2007, Defendant filed a motion for leave to file a supplemental

memorandum regarding collateral estoppel which was granted.  ECF Dkt. #25-26.  Accordingly,

on July 18, 2007, Defendant filed a supplemental memorandum regarding the issue of collateral

estoppel.  ECF Dkt. #28.  On July 27, 2007, Plaintiff filed a brief in opposition to Defendant's

supplemental memorandum regarding collateral estoppel.  ECF Dkt. #29.


**II.**      **STANDARD OF REVIEW**

The function of summary judgment is to dispose of claims without trial when one party is

unable to demonstrate the existence of a factual dispute which, if present, would require

resolution by a jury or other trier of fact.  *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir.

1982).  Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions

and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to the interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue as
> to any material fact and that the moving party is entitled to a judgment as a
> matter of law.

FED. R. CIV. P. 56(C).  The party moving for summary judgment bears the initial burden of

informing the court of the basis for the motion, and must identify the portions of "'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting FED. R. CIV. P. 56(c)).  The moving party can

discharge this burden by showing that the nonmoving party has failed to establish an essential

element of the nonmoving party's case for which he or she bears the ultimate burden of proof at

trial.  *Celotex*, 477 U.S. at 323; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535

(6th Cir. 1995).  The evidence submitted is viewed in a light most favorable to the nonmoving

party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*,

398 U.S. 144 (1970).  If the moving party meets this burden, then the nonmoving party must take

affirmative steps to avoid the entry of a summary judgment.  FED. R. CIV. P. 56(e).  The

nonmoving party must present additional evidence beyond the pleadings and must do so by

presenting more than a scintilla of evidence in support of his or her position.  *Anderson v.

Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

The Court must grant summary judgment unless sufficient evidence exists that favors the

nonmoving party such that a judge or jury could  reasonably return a verdict for that party.

*Anderson,* 477 U.S. at 249.  The court is not "to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  *Id.*  If a party fails to

make a showing that is "sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial," then the court is required to

enter summary judgment.  *Celotex*, 477 U.S. at 322.


**III.    LAW AND ANALYSIS**

Defendant argues that it did not breach the Agreement between the parties, that Plaintiff

did not suffer any damages due to a corporate reorganization, and Defendant should be awarded

attorney fees under the Agreement.  ECF Dkt. #18, Attachment 1.  Plaintiff argues that

Defendant breached the Agreement between the parties by not indemnifying Plaintiff for the

costs of asbestos remediation, requests a declaratory judgment consistent with that interpretation,

and an award of attorney fees pursuant to the Agreement.  ECF Dkt. #21.

Specifically, Plaintiff argues that because Defendant put the asbestos into the buildings during its ownership, any resulting liability for remediation of that asbestos falls upon Defendant under 7.2.7 of the Agreement.  ECF Dkt. #21 at 9.  Plaintiff further argues that because asbestos remediation is not a liability explicitly assumed under the Agreement that it must be a Retained Liability of Defendant.  Defendant, however, argues that collateral estoppel applies and alternatively, that because the need for remediation arose out of Plaintiff's business decision to tear down the buildings, that the liability for remediation falls to Plaintiff under 7.1.7 of the Agreement.  ECF Dkt. #18, Attachment 1 at 5.  Defendant also argues that the only environmental liabilities it retained in the Agreement are with respect to claims of governments or third parties under 7.2.3.

As an initial matter, both parties have briefed the issue of collateral estoppel.  *See* ECF Dkt. #28, 29.  The Court finds that the state court did not interpret the parties agreement nor did it adjudicate the issues before this Court.  Rather, the state court indicated that "Plaintiff simply [failed] to provide enough information of a real and justiciable controversy at this time."  ECF Dkt. #19, Attachment 11.  The use of the words "simply" and "at this time" clearly indicate that the sole ground for dismissal was a failure to state enough facts to show a claim upon which relief could be granted.  *See* Ohio R. Civ. P. 12(B)(6).  The state court found that Plaintiff did not plead with sufficient clarity or specificity for the state court to determine that there existed "a real and justiciable controversy between the parties that must be resolved by the court at this time."   ECF Dkt. #19, Attachment 11.

Defendant argues that the state court decision conclusively establishes that the Plaintiff's position in the instant law suit was an incorrect interpretation of the Agreement.  ECF Dkt. #28. However, Plaintiff argues and the Court agrees that the state court's sparse ruling does not support such a sweeping interpretation.  *See* ECF Dkt. #29.  The state court explained, "The

citation makes no mention of any environmental problems, such as asbestos, which must be fixed in order to resolve the fire code violation." ECF Dkt. #19, Attachment 11. Defendant infers that the court was referencing paragraph 7.2.3 that provides for the situation where "environmental claims of governments ... seek to redress or impose sanctions" for conditions occurring prior to the Closing Date. *See* ECF Dkt. #19, Attachment 2 ("the Agreement"). Insofar as Defendant's inference is correct that the state court concluded that there were no environmental claims of governments at issue in the state court suit, this Court finds the same to be the case in the instant matter. Thus, insofar as collateral estoppel could apply to this case, it is limited to the issue of the applicability of paragraph 7.2.3 of the Agreement to the instant facts.

In that regard, it is clear from the facts of this case that there are no claims of governments or third parties with respect to environmental issues as provided for in paragraph 7.1.3 or 7.2.3 of the Agreement. Paragraphs 7.1.3 and 7.2.3 provide, respectively, that Plaintiff will assume, "All liabilities with respect to environmental claims of governments or third parties which seek to redress or impose sanctions with respect to acts, conditions or omissions occurring after the Closing Date[,]" and Defendant will retain "All liabilities with respect to environmental claims of governments or third parties which seek to redress or impose sanctions with respect to acts, conditions or omissions occurring prior to the Closing Date[.]" *See* ECF Dkt. #19, Attachment 2 ("the Agreement").

This litigation arose after an incident with the city over a fire code violation which resulted in an agreement between Plaintiff and the city to tear down a portion of Building 24. *See* ECF Dkt. #19, Attachment 12; Krimmel Affidavit at ¶ 9. The tear down required asbestos mediation for which Plaintiff now seeks indemnification. However, the city did not require asbestos remediation as part of the fire code violation nor was asbestos remediation mentioned in the city fire code violation. *See* ECF Dkt. #19, Attachment 11. Further, the fire code violation

-6-

that the city raised was not an "environmental claim", but rather a safety issue.  *See* ECF Dkt. #19, Attachment 7 at 3.  In short, the lawsuit with the city and the resulting plea agreement have nothing to do with the instant action for contract damages and declaratory relief except to the extent that the ultimate liability for the costs of the asbestos redmediation is an issue before this Court.  Accordingly, there are no "environmental claims of governments or third parties" at issue in the instant case and paragraphs 7.1.3. and 7.2.3 of the Agreement do not apply.

The heart of the matter is whether Defendant breached the Agreement between the parties by failing to pay for the asbestos remediation costs incurred by Plaintiff.  The parties agree that they have an Agreement, that they are sophisticated parties, that Ohio law applies and that no parole evidence is admissible to interpret their Agreement.  *See* ECF Dkt. #s 18-23.  Also, neither side argues that the Agreement is ambiguous.  However, the parties stringently disagree as to the interpretation of the Agreement as it pertains to asbestos remediation.  Plaintiff argues that asbestos remediation is a liability under the contract and it is a liability retained by Defendant.  ECF Dkt. #21.  Defendant argues that the buildings were purchased "as is", and asbestos remediation is not a retained liability of Defendant's under the Agreement.  ECF Dkt. #18, 22.  This difference in interpretation does not render summary judgment inappropriate.  Rather, the interpretation of a contract is a matter of law.  *See New Mkt. Acquisitions, Ltd. v. Powerhouse Gym, 154 F. Supp. 2d 1213, 1220 (2001)* (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St. 3d 107, 108 (1995)); *Maurer v. Joy Techs., Inc*., 212 F.3d 907, 914 (6th Cir. 2000); *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952 (1996);  *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991) (applying Ohio law).  "If the terms of the contract are clear and unambiguous, the court shall presume that the parties' intent resides in the language of the agreement[.]"  *New Mkt. Acquisitions, 154 F. Supp. 2d at 1220*; *See Foster Wheeler Enviresponse, Inc. v. Franklin County Convention*

*Facilities Authority*, 78 Ohio St. 3d 353, 361 (1997) (citing *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130 (1987)); *but see Graham*, 76 Ohio St.3d at 313 (explaining that an ambiguous contract term is a question of fact for the jury).  In other words, "where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."  *Alexander v. Buckeye Pipe Line Co.* 53 Ohio St.2d 241, 246, 374 N.E.2d 146, 150 (1978).  The court will read the writing as a whole and determine the intent through a consideration of the whole contract.  *See Foster Wheeler Enviresponse,* 78 Ohio St.3d at 361.

The Court finds that the Agreement is unambiguous with regard to the liability for asbestos remediation.  From the four corners of the document, it is clear that the parties did not intend to include the asbestos as a Retained Liability under the Agreement, but rather the asbestos remediation has arisen from Plaintiff's use of the buildings and so falls under the category of Assumed Liabilities.

The Agreement states in paragraph 7.1 that Plaintiff will "assume and agrees to pay ...only those debts, liabilities, obligations, contracts, leases, commitments and undertakings [of Defendant] set forth below[.]"  ECF Dkt. #19, Attachment 2 at 29.  The Agreement then lists, in relevant part, the following "Assumed Liabilities":

> 7.1.7    All liabilities arising as a result of [Plaintiff's] ownership, use or operation of the Purchase Assets after the Closing Date.

*Id.*  The mirror provision regarding Defendant's "Retained Liabilities" is listed in Paragraph 7.2.1.  *Id.* at 31.  Paragraph 7.2 indicates that Plaintiff "will not assume [any liabilities] of [Defendant] unless expressly described above" including, and goes on to enumerate a non-exhaustive list of "Retained Liabilities" of Defendant.  ECF Dkt. #19, Attachment 2 at 31.  These Retained Liabilities include, in relevant part:

> 7.2.7    All liabilities arising as a result of [Defendant's] ownership, use or operation of the Purchase Assets prior to the Closing Date.

-8-

ECF Dkt. #19, Attachment 2 at 31.  As Plaintiff notes, "'Liability' is a broad term and has been defined to include: 'an obligation one is bound in law or justice to perform,' 'condition of being actually or potentially subject to an obligation,' [and] 'every kind of legal obligation, responsibility, or duty[.]'" ECF Dkt. #21 at 6.

The Court notes that both parties knew that there was asbestos in the buildings at the time of the sale and yet the words "asbestos" and "remediation" are not used in the Agreement.  *See* ECF Dkt. #19, Attachment 2.  It is reasonable for the Court to assume that both Plaintiff and Defendant, as sophisticated parties in the chemical manufacturing industry, have extensive knowledge of chemicals, the use of various products to make chemicals and the federal and state regulations regarding their industry and the handling of hazardous materials.  However, neither side moved to negotiate specific provisions regarding the asbestos in the buildings as a present or future liability.  *See* Krimmel Affidavit at ¶ 6.  In fact, the Agreement clearly indicates that there was no problem with the buildings at the time of the sale and they were fit for their use in chemical manufacturing.  Paragraph 4.11 states that at the time of the sale the buildings were "in reasonable repair and satisfactory operating condition to manufacture and supply Products in the ordinary course of business."  ECF Dkt. #19, Attachment 2 at 24.  Further, Paragraph 4.12 indicates that at the time of the sale, Defendant had Environmental Permits "sufficient for the operation of the Purchase Assets as presently being conducted and [Defendant] is in compliance with material terms and conditions of the Environmental Permits."  *Id.*

"In construing a contract, a court * * * must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage[.]"  *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994) (applying Ohio law).  The Court must read these clauses as indicating that Building 24 and the other buildings on the property were in reasonable repair and operating condition at the time that Plaintiff took

-9-

ownership of them and that despite the asbestos, the buildings met all of the safety code and

environmental regulations sufficient for Defendant to transfer all of the proper permits to run the

facility.  Moreover, Courts have recognized that asbestos is not a liability in and of itself.  For

example, "the ownership or operation of a building that contains asbestos insulation is not an

abnormally hazardous activity.  The asbestos is safe as long as it is not allowed to leak, and it

can be prevented from leaking by the taking of feasible precautions." *G.J. Leasing Co. v. Union

Elec. Co.*, 54 F.3d 379, 386-387 (7th Cir. 1995).  The facts, taken in a light most favorable to

Plaintiff, support the conclusion that prior to the decision to tear down the building, the asbestos

was not a  liability.  Indeed, asbestos remains in the remaining buildings and the portion of

Building 24 that was not torn down "Because there was ... no need to abate the asbestos.  As we

do work in the building and replace certain pieces, that is when we abate the asbestos and replace

it with nonasbestos materials."  Krimmel Deposition at 39.  Based on the foregoing, it is

reasonable to infer that the asbestos was also not a liability at the time of the sale, but actually

aided in the function of the buildings.  *See* ECF Dkt. #19, Attachment 3 (Krimmel Deposition) at

14-15 (explaining that the asbestos was installed for maintenance purposes).  If the asbestos in

the buildings was not and is not a liability absent the need for replacement parts or demolition,

then it can not be fairly said to be a liability Defendant retained pursuant to the Retained

liabilities clause of the Agreement.

Rather, the liability for asbestos *remediation* at issue here arose as a result of Plaintiff's

use and operation of the buildings and specifically, the decision to tear down portions of

Building 24.  *See* ECF Dkt. #21, Attachment 1 (Krimmel Affidavit) at ¶ 10.  The facts establish

that Plaintiff purchased from Defendant a chemical manufacturing plant that was in reasonable

repair at the time of sale and Plaintiff used the facility to manufacture chemicals.  At some point

during its ownership, Plaintiff stopped using some of the buildings at the site, including portions

-10-

of Building 24.  *See* Krimmel Affidavit at ¶ 9; Krimmel Deposition at 80.  The facts also

establish that Plaintiff was cited by the city because the sprinklers in Building 24 were not up to

the present day safety code.  Krimmel Affidavit at ¶ 9.  Plaintiff has plainly stated that at the

time of the litigation with the city, it was cheaper to tear down portions of Building 24 then to

repair it to satisfy fire code regulations.  *Id.*  Thus, Plaintiff made the business decision to tear

down a portion of the building rather then bring it up to code.  The only conclusion to be drawn

on these facts is that the asbestos remediation at issue here was the direct result of Plaintiff's

business decision to handle the maintenance of its buildings in a certain manner and ultimately,

to tear down an old and unused portion of a building on their property.  *See* ECF Dkt. #19,

Attachment 8 (1/18/04 Zaclon letter) (explaining that the buildings "have deteriorated to the

point where" they need to be taken down).  The consequences of Plaintiff's business decisions to

stop using portions of its buildings, failing to maintain fire codes and then tearing down the

building, fall squarely onto Plaintiff's responsibility as the property owner.  It certainly does not

fall to Defendant to be responsible for the liability of maintenance for old or aging buildings, nor

does the Agreement support such an interpretation.

      If the clean-up costs resulting from deteriorating buildings, failure to maintain safety

code standards or Plaintiff's business decision to cease operating certain buildings and

demolishing said buildings is apportioned among the parties in the Agreement, it falls into the

Assumed Liabilities category.  Plaintiff assumed, "[a]ll liabilities arising as a result of

[Plaintiff's] ownership, use or operation of the Purchase Assets after the Closing Date."  In this

case, Plaintiff failed to maintain city safety code standards in Building 24 during its ownership

and use of the Building.  Plaintiff's decisions regarding the maintenance of its buildings are

directly related to Plaintiff's use of the buildings during its time of ownership.  Hence, the

liability of asbestos remediation has arisen as a result of Plaintiff's use and operation of the

Buildings after the Closing Date.      Moreover, prudence dictates that an owner of a chemical plant has the responsibility to maintain basic levels of safety in its buildings and any liability for failure to comply with basic safety levels resulting in the need for environmental clean-up belongs to the owner at the time that the environmental clean up becomes necessary.

Based on the foregoing, the Court DENIES Plaintiff's motion for summary judgment on the Complaint and GRANTS Defendant's cross motion for summary judgment on the Complaint.

Regarding Defendant's counterclaim for reasonable attorney fees and costs associated with this litigation, the Court DENIES the counterclaim.  Defendant argues that Paragraph 8.1(c) of the Agreement provides that Plaintiff shall indemnify Defendant for any cost, reasonable attorney's fees or expense with respect to liabilities arising from or attributable to Plaintiff's failure to duly perform and discharge any Assumed Liability.  ECF Dkt. #18, Attachment 1 at 19.  Indeed, Paragraph 8.1(c) provides, in pertinent part, that:

> [Plaintiff] shall defend, indemnify and hold [Defendant] harmless from any loss, damage, claim, injury, cost, reasonable attorney's fees or expense with respect to liabilities arising from or attributable to: (c) the failure of [Plaintiff] to duly perform and discharge any Assumed Liability.

ECF Dkt. #19, Attachment 2 at 34.  In this case, Plaintiff brought the instant suit for a declaratory judgment and indemnification for asbestos remediation that it incurred.  The Court has found in favor of the Defendant by determining that it does not owe Plaintiff indemnification for asbestos remediation.  However, this is also not a case where Plaintiff has failed to "duly perform and discharge" any Assumed Liability.  Rather, Plaintiff has taken on the cost and the time to remediate the asbestos.  This is not a case where Defendant had to pay for the remediation because Plaintiff shirked its duty and so had to come to Court to claim its debt.  Accordingly, the Court DENIES Defendant's counterclaim for attorney fees.

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, the Court GRANTS Defendant's cross motion for summary judgment on the complaint and DENIES the counterclaim.  The Court further DENIES Plaintiff's motion for summary judgment and DISMISSES with prejudice the Complaint at Plaintiff's cost.  ECF Dkt. #18, 20.


Dated: August 6, 2007                          <u>        */s/George J. Limbert*                        </u>
                                                             GEORGE J. LIMBERT
                                                             U.S. MAGISTRATE JUDGE